RICHARD W. HALE *vs.* GEORGE P. BOWLER & others.

OLD COLONY TRUST COMPANY *vs.* SAME.

ANGELINA G. STEVENS *vs.* SAME.

Suffolk. May 19, 1913. — June 18, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Trust,* Restriction of income. *Equity Jurisdiction,* To reach and apply equitable assets.

A trust created for the benefit of a spendthrift provided that the income from the fund in question should be paid to the spendthrift during his lifetime, but

without power of alienation and not subject to interference or control by creditors. This trust was created upon the withdrawal by the spendthrift of his opposition to the allowance of a certain will, but his opposition thus withdrawn had not been made in good faith and was merely an attempt to extort a settlement for his benefit. *Held,* that the abandonment by the spendthrift of his dishonest opposition to the allowance of the will gave him no rights whatever and could furnish no valid consideration for any promise or payment to him or for his benefit; that he took merely the qualified interest that the donor chose to give him, with no power over the income of the trust until it came into his possession, and that neither his creditors nor his assignees could have any greater rights than he had himself.

THREE BILLS IN EQUITY, filed in the Supreme Judicial Court, the first two on October 18, 1911, and the third, as amended, on March 30, 1909, each of the first two bills being brought by a trustee under an alleged spendthrift trust for the benefit of the defendant George Pendleton Bowler, for instructions, and the third bill being brought by a creditor of the defendant George Pendleton Bowler, who held instruments purporting to be assignments of the income of such trusts and sought to reach and apply such income to the payment of the debt due to her from that defendant.

The first two cases were referred to Franklin T. Hammond, Esquire, as master, and the third case was referred to James D. Colt, Esquire, as master.

At the request of the parties the three cases were reserved together by *De Courcy, J.,* for determination by the full court, the questions raised and the facts necessary for their determination being stated in the opinion.

The cases were submitted on briefs.

*R. D. Weston,* for the plaintiffs in the first two cases and for the defendants Hale and the Old Colony Trust Company in the third case, contending for the validity of the spendthrift trusts.

*A. N. Hand* (of New York), for Robert P. Bowler.

*F. E. Bradbury & C. A. Barnes,* for M. Colby Little, one of the defendants in the first two cases, and for Angelina G. Stevens, the plaintiff in the third case and one of the defendants in the first two cases.

No brief was filed for the defendant George P. Bowler.

SHELDON, J. Each one of these cases depends upon the question whether the trust funds mentioned in the first two cases respectively are held upon valid spendthrift trusts in favor of George P. Bowler, so that the income could not be disposed of or alienated

by him, and could not be attached at law or reached in equity by his creditors, before it should be received by himself. This again, as to each one of the trusts under consideration, depends upon whether that trust was created by himself out of his own property or whether it was created by another out of property in which George at the creation of the trust had no interest, and acquired no interest other than the strictly limited one created by the terms of the trust instrument. This is the rule which was settled in this Commonwealth by the leading cases of *Broadway National Bank* v. *Adams*, 133 Mass. 170; *Pacific National Bank* v. *Windram*, 133 Mass. 175; and the cases collected by Loring, J., in *Lathrop* v. *Merrill*, 207 Mass. 6, 9.

The property included in the "Cincinnati trust" so called, which is the subject of the first suit, was conveyed by George P. Bowler to Hale, the plaintiff in that suit, in trust to pay the income thereof during the life of George to his mother, and after her death to such person or persons as she might by will appoint. There were equitable remainders after the death of George, which are not now material. This transfer, it has been found, was executed by George in good faith while he was solvent, was not upon any trust for his benefit, and was valid against any creditors of his or any others subsequently claiming under him. His mother died, leaving a will by which she appointed the income to her son Robert, and purposely omitted to make any provision for George. George contested the probate of this will; but his contest was not made in good faith or with any honest belief that it was well founded. On the contrary he made the contest with no expectation of success, but solely for the purpose of forcing a settlement from his brother Robert. Thereupon Robert, after some negotiations, though denying the validity of any of George's claims or the existence of any ground for opposing the probate of the will, paid a sum of money to George; provided that the income of the "Cincinnati trust" should be paid to George during his lifetime, but without its being liable to interference or control by his creditors and without power of alienation thereof; and also established the trust which is the subject of the second suit, by paying the amount thereof to the Old Colony Trust Company, upon trusts as to the income substantially the same as already stated, with equitable remainders after the death of George, which likewise are not now material.

Upon these facts, it is impossible to say that the trusts were in any sense created by George or out of money or property in which he had an interest. The spendthrift provisions were not created or suggested by him; they were proposed and insisted upon by Robert. It sufficiently appears that these provisions were reluctantly assented to by George, only because he could extort no other terms from Robert. Robert on his side was merely substituting this method of supporting his wasteful and profligate brother for the more troublesome method of doling out to him from time to time such assistance as he, Robert, should see fit to provide. The withdrawal of George's dishonest opposition to the probate of his mother's will furnished no legal consideration for any promise or payment to him or for his benefit. It was merely a blackmailing contest, and its abandonment gave to him no rights whatever. *Silver* v. *Graves,* 210 Mass. 26, 30. George took upon abandoning this illusory contest simply what his brother chose to give him; and this, as in *Billings* v. *Marsh,* 153 Mass. 311, and *Nickerson* v. *Van Horn,* 181 Mass. 562, 563, was not an absolute interest in the income of these funds, but merely a qualified interest, with no power over it until it should come into his possession. It is not in his control in the meantime; it has not yet become his property for purposes of disposition; and neither his creditors nor his assignees can have any greater rights in it than he himself has acquired.

It is not suggested that there are here any contingent remainders in which George can be said to have a vested interest, such as were found to exist and were made available to creditors in *Alexander* v. *McPeck,* 189 Mass. 34; *Huntress* v. *Allen,* 195 Mass. 226; and *Clarke* v. *Fay,* 205 Mass. 228.

The result is that in each of the first two cases the plaintiff must be instructed that the spendthrift provisions of the trust are valid. In the third case, the plaintiff cannot hold the property which she seeks to subject to the payment of her alleged demands; and accordingly her bill must be dismissed with costs (*Hoshor-Platt Co.* v. *Miller,* 190 Mass. 285; *Brown* v. *Floersheim Mercantile Co.* 206 Mass. 373, 377), but without prejudice to an action at law against the defendant George P. Bowler.

*So ordered.*